# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SHARON SMITH,

    Plaintiff,

      v.

MICHAEL JAMES ASTRUE,
Commissioner of Social Security,

    Defendant.

**Civil Action No. 09-2193 (CKK)**

## MEMORANDUM OPINION
(March 30, 2013)

Plaintiff Sharon Smith brings this action seeking review of the final administrative decision by Defendant Michael James Astrue, in his official capacity as Commissioner of Social Security, denying the Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income Benefits. Presently before the Court are the Plaintiff's [15] Motion for Judgment of Reversal, and the Defendant's [17] Motion for Judgment of Affirmance. Upon consideration of the pleadings, the administrative record, and the relevant legal authorities, the Court finds the administrative decision is not procedurally deficient and is supported by substantial evidence. Accordingly, for the reasons stated below, the Plaintiff's motion is DENIED and the Defendant's motion is GRANTED.

## I. BACKGROUND

The Plaintiff is a thirty seven year-old female resident of Washington, D.C. A.R. 42. The Plaintiff was placed in special education classes and completed the ninth grade, but dropped out of high school in the tenth grade. A.R. 26-27. The Plaintiff entered the Job Corps and received a certificate in food service. *Id.* at 220. Her relevant work experience includes

employment as a housekeeper, security officer, food service provider, and sales associate/cashier.  A.R. 132; *id.* at 28-30.  On July 11 and July 18, 2006, the Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits pursuant to Titles II and XVI of the Social Security Act respectively, citing her asthma and hyperthyroidism.  *Id.* at 42, 43.  To qualify for disability insurance benefits and supplemental security income, a claimant must demonstrate a disability, which is defined by the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1); *id.* § 1382c(a)(3)(A).  In addition, a claimant seeking disability or supplemental security income benefits must have a severe impairment that makes her unable to perform past relevant work or any other substantial gainful work that exists in the national economy.  *Id.* § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).  Substantial gainful work activity is work activity that involves doing significant physical or mental activities and is the kind of work that is usually done for pay or profit.  20 C.F.R. § 404.1572(a)-(b).

The Plaintiff's applications were initially denied.  *Id.* at 42-43, 47-49.  The Plaintiff moved for reconsideration, indicating cognitive and mood disorders as the basis for her claim. *Id.* at 45, 46.  The Plaintiff's applications were once again denied upon reconsideration.  *Id.*  At the Plaintiff's request, an administrative law judge ("ALJ") held a hearing on the Plaintiff's applications, during which the Plaintiff, represented by counsel, and a Vocational Expert testified.  A.R. 57 (Request for Hearing); *id.* at 21-41 (Hearing Tr.).[1]  In addition to this

---

[1] Following the hearing, the ALJ left the record open for two weeks to allow Plaintiff time to submit additional evidence, namely her educational records.  A.R. 7.  Plaintiff's counsel

testimony, the ALJ considered the opinions submitted by three experts: Dr. Robert Barnes, Dr.

Barry Hurwitz, and Dr. Vincent Greenwood.  Dr. Barnes examined the Plaintiff in March 2007.

A.R. 216.  Dr. Barnes noted that the Plaintiff's medical records indicated no history of anxiety,

bipolar disorder, depression, suicidal ideation, or schizophrenia.  *Id.*  The Plaintiff received a full

scale IQ score of 64, indicating mild mental retardation.  *Id.* at 217.  However, Dr. Barnes

explained that "because of the verbal remarks during scoring and many of her answers following

a period of processing," in his opinion the Plaintiff "was misrepresenting answers."  A.R. 219;

*id.* ("We cannot know if these scores are trustworthy under the spector of malingering.").  The

Plaintiff disclosed "certain indications of a thought disorder," including confusion, difficulty

concentrating, and paranoia, but Dr. Barnes concluded the symptoms were insufficient to

diagnosis a thought disorder.  *Id.* at 222.  The Plaintiff stated she had symptoms of bipolar

disorder, but admitted she had never been diagnosed with bipolar disorder.  *Id*. at 219-220.  Dr.

Barnes diagnosed the Plaintiff with mild mental retardation but declined to diagnose depression

because it may have been a side effect of her medications.  *Id.* at 222.

Dr. Barry Hurwitz, the state agency expert, reviewed Dr. Barnes' report, noting that "Dr.

Barnes submitted a report with opinions that appear to be inconsistent."  A.R. 228.  Dr. Hurwitz

explained that Dr. Barnes "indicated that there was evidence to suggest that the formal test

results could not be trusted," yet went on to diagnose mental retardation "without providing

sufficient alternative clinical data."  *Id.*  Moreover, Dr. Barnes "present[ed] no rationale for

differentiating between what he opines are reliable statements made by the Claimant and those

that are fabrications or exaggerations."  *Id.*  Dr. Hurwitz noted that "[o]ther comments by Dr.

---

indicated the records had been lost by the Washington, D.C., school system, therefore no further
evidence was received after the hearing.  *Id.*; *accord* A.R. 154.

Barnes indicate that the Claimant is more functionally competent than reflected in some aspects of her clinical presentation." *Id.* Dr. Hurwitz opined "there is sufficient information to conclude the Claimant's credibility is questionable," but "[n]evertheless, she suffers a mental impairment," in the form of a cognitive disorder (not otherwise specified), mood disorder (not otherwise specified), and personality disorder (not otherwise specified). *Id.* at 229. Dr. Barnes also completed a mental residual functional capacity analysis, discussed in detail *infra*.

Dr. Vincent Greenwood examined the Plaintiff in May 2007. A.R. 251. Dr. Greenwood noted that there was "a complaining quality" to many of the Plaintiff's comments, and it was difficult "to get a clear and coherent history." *Id.* at 253. The Plaintiff "was not fully collaborative during the evaluation," and "did not put forth much of an effort." *Id.* at 254. The Plaintiff's "thought processes were concrete," but she disclosed feelings of paranoia and seemed "very sensitive to the possibility of being criticized." *Id.* Dr. Greenwood indicated her mood was depressed, and "[i]nsight and judgment are markedly below average." *Id.* After administering various psychological tests and inventories, Dr. Greenwood noted that the Plaintiff's "current overall level of functioning is in the mild mental retardation range," but that the Plaintiff's lack of motivation and effort "clearly compromised her performance." *Id.* at 255. Dr. Greenwood also opined that the Plaintiff's depressive symptomology contributed "to a poor result." *Id.* Ultimately Dr. Greenwood found that the Plaintiff suffers from bipolar disorder, highlighting that the Plaintiff described abnormally high and low mood swings, racing thoughts, impulsiveness, and flight of ideas. *Id.* at 256. At the time of her evaluation, the Plaintiff described symptoms of depression, including loss of appetite, difficulty sleeping, feelings of guilt and self-criticism, and intense feelings of sadness. *Id.* In addition to bipolar disorder and mild mental retardation, Dr. Greenwood found the Plaintiff had a moderate level of depressive

symptoms and a mild to moderate level of anxiety symptoms. *Id.* at 255. Dr. Greenwood strongly encouraged the Plaintiff to begin psychiatric treatment. *Id.* at 257.

  B. *Administrative Law Judge's Decision*

  In making a disability determination, the ALJ is required to use a five-step sequential analysis examining (1) the claimant's recent work activity, (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairments are medically equivalent to those contained in the Listing of Impairments promulgated by the Social Security Administration, (4) the claimant's residual functional capacity and ability to perform past work, and (5) the claimant's ability to perform jobs reasonably available in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Blackmon v. Astrue*, 719 F. Supp. 2d 80, 82-83 (D.D.C. 2010). The ALJ is to consider (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints, and (4) the plaintiff's age, education, and work history. *Blackmon*, 719 F. Supp. 2d at 88-89. The claimant bears the burden of proof with respect to the first four steps of the analysis, but at step five the burden shifts to the Social Security Administration to demonstrate that the claimant is able to perform "other work" based on her residual functional capacity, age, education, and past work experience. *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

  At the first step in the analysis, the ALJ must determine whether the claimant is engaged in "substantial gainful activity"; if so, the claim must be denied. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ determined the Plaintiff has not engaged in substantial gainful activity since January 1, 2005. A.R. 10. The Plaintiff testified that she worked as a retail sales associate for several months in 2005, but the ALJ concluded that "a review of the earnings record reveals that this work activity did not rise to the level of substantial gainful activity" under the applicable

regulations.  *Id.*  Having found the Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to step two.

In step two, the ALJ must consider the "medical severity" of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does not have a severe, medically determinable physical or mental impairment that "is expected to result in death," or "[has] lasted or [is] expected to last for a continuous period of at least 12 months," the ALJ will find the claimant is not disabled.  *Id.* (cross-referencing 20 C.F.R. § 404.1509).  In this case, the ALJ found the Plaintiff had no severe physical impairments, and only one severe mental impairment, mild mental retardation.  A.R. 10.  The ALJ declined to find the Plaintiff also suffered from depression, anxiety, bipolar disorder, or an organic mental disorder, noting the Plaintiff has never sought mental health treatment, the experts suspected the Plaintiff of malingering, and certain expert opinions were inconsistent with the record as a whole.  *Id.* at 10-13.  However, because the ALJ found at least one severe impairment, the ALJ turned to the third step.

Step three of this analysis requires the ALJ to compare the claimant's impairments to the Social Security Administration's Listing of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairments meet or are medically equal to a listed impairment, the ALJ will find the claimant is disabled.  *Id.*  The ALJ compared the Plaintiff's impairment to Listings 12.05(C) and (D).  Listing 12.05(C) requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Listing 12.05(D) requires a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) "[m]arked restriction of activities of daily living"; (2) "[m]arked difficulties in maintaining social functioning"; (3) "[m]arked difficulties in maintaining concentration, persistence, or pace"; or (4) "[r]epeated episodes of

decompensation, each of extended duration."   Comparing the Plaintiff's impairment to these listings, the ALJ noted that the Plaintiff's verbal, performance, and full scale IQs fell between 60 and 70, but concluded the Plaintiff's limitations were not severe enough to equate to either listing. A.R. 11.  Since the Plaintiff's impairment did not meet or equal a listed impairment, the ALJ proceeded to the fourth step of the disability determination.

In step four, the ALJ must consider the claimant's "residual function capacity" and past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can still do their past relevant work, the ALJ will find the claimant is not disabled.  *Id.*  With respect to the Plaintiff, the ALJ concluded that the Plaintiff had no exertional limitations, but "is markedly limited in her ability to understand, remember, and carry out detailed instructions."  A.R. 11.  Furthermore, the ALJ found the Plaintiff "is moderately limited in maintaining attention and concentration for extended periods of time, in interacting appropriately with the general public, in accepting instructions and responding appropriately to criticism from supervisors, and in responding appropriately to changes in the work setting."  *Id.*

After asking the Vocational Expert to classify the Plaintiff's past relevant work, the ALJ posed a hypothetical inquiring whether a person with the Plaintiff's limitations, approximately the Plaintiff's age, with limited special education and the Plaintiff's work experience, could perform any of the Plaintiff's past relevant work.  A.R. 37.  The Vocational Expert opined that the Plaintiff could still work as a housekeeper and child care provider/assistant.  *Id.* at 37-38.  Plaintiff's counsel asked the expert if his opinion would change if the limitation in concentration and persistence was increased to a marked limitation, and the expert replied that it "would preclude the performance of any and all jobs."  *Id.* at 39-40.  Counsel did not pose any other hypotheticals to the expert.  Relying on the Vocational Expert's testimony, the ALJ held that

7

"comparing the claimant's residual functional capacity with the physical and mental demands of her past relevant work as a housekeeper and a child care assistant/provider," the Plaintiff "is able to perform this work as generally performed." A.R. 14.

Finally, step five requires the ALJ to "determine whether there is any other gainful work in the national economy that the claimant could perform notwithstanding [her] disability." *Blackmon*, 719 F. Supp. 2d at 83; *see* 20 C.F.R. § 404.1520(a)(4)(v). Because the ALJ found the Plaintiff could still perform her past relevant work, the ALJ did not reach step five in this case. A.R. 14.

The Plaintiff sought review of the ALJ's decision by the Appeals Council. A.R. 19-20. The Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision," meaning the ALJ's decision constitutes the Commissioner's final decision regarding the Plaintiff's claim. A.R. 1.

## II. LEGAL STANDARD

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of Health, Ed. & Welfare*, 627 F.2d 278, 281 (D.C. Cir. 1980)). A court will not disturb the determination of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards. 42 U.S.C. §§ 405(g), 1383(c); *Butler*, 353 F.3d at 999. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Butler*, 353 F.3d at 999 (citation omitted).

In reviewing an administrative decision, a court may not determine the weight of the evidence nor substitute its judgment for that of the Commissioner if his decision is based on substantial evidence. *Butler*, 353 F.3d at 999; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000). The reviewing court must also determine whether credible evidence was properly considered. *Id*. A reviewing court should not be left guessing as to how the ALJ evaluated probative material, and it is reversible error for an ALJ to fail in his written decision to explain sufficiently the weight he has given to certain probative items of evidence. *Id.*

### III.  DISCUSSION

A.      *Severity of the Plaintiff's Mental Impairments*

The Plaintiff argues that the ALJ erred in finding depression, anxiety, bipolar disorder, and organic mental disorder were not among the Plaintiff's severe impairments.[2] Specifically, the Plaintiff contends that the ALJ did not give proper weight to (1) the diagnosis by Dr. Greenwood that the Plaintiff has moderate bipolar disorder; and (2) Dr. Hurwitz's diagnosis of cognitive, mood, and personality disorders, not otherwise specified. Pl.'s Mot. at 4-5.

The ALJ gave "limited evidentiary weigh to Dr. Greenwood's consultative assessment" that the Plaintiff suffered from bipolar disorder because "there is no evidence that the claimant has received any mental health treatment whatsoever," his opinion was based "in large part, if not entirely, on the claimant's own self report at the time," and is inconsistent with the record in

---

[2]  The Plaintiff does not challenge the ALJ's finding that her asthma, dermatitis, and hyperthyroidism are not severe impairments. *See* Pl.'s Mot. at 4.

its entirety.  A.R 10, 13.  The administrative record, including Dr. Greenwood's report, provides substantial evidence to support the ALJ's decision to disregard Dr. Greenwood's overall diagnosis.

In his report, Dr. Greenwood identified several issues undermining the Plaintiff's credibility, including that "[i]t was difficult to get a clear and coherent history from [the Plaintiff]," "[s]he contradicted herself on a number of occasions," and she did not seem very forthcoming.  A.R. 253.  The Plaintiff "was not fully collaborative during the evaluation," and "did not put forth much of an effort."  *Id.* at 254.  Early on in the evaluation she asked why she had to do the evaluation, and "[t]here was [] a complaining quality to many of her comments." *Id.* at 253.  Nevertheless, Dr. Greenwood's bipolar diagnosis is based entirely on the Plaintiff's self-reported symptoms.  *Id.* ("Ms. Smith does describe a history that is consistent with the diagnosis of bipolar disorder."); *id.* at 256 (recounting symptoms described by the Plaintiff).  Dr. Barnes', Dr. Hurwitz's, and Dr. Greenwood's observations regarding the Plaintiff's lack of credibility constitute substantial evidence supporting the ALJ's finding that Dr. Greenwood's diagnosis—based exclusively on the Plaintiff's self-report—was not evidence of a medically determinable mental impairment.

The record also supports the limited weight the ALJ assigned to Dr. Hurwitz's assessment.  With respect to the organic mental disorders identified by Dr. Hurwitz, the ALJ found "there is no evidence of any such medically-determinable impairment," emphasizing that the Plaintiff never received any mental health treatment and her subjective complaints lack credibility, A.R. 10, 12, a factor Dr. Hurwitz acknowledged, A.R. 229.  Regardless, any error by the ALJ with respect to Dr. Hurwitz's opinion regarding the Plaintiff's mental impairment does not require reversal in this case because the ALJ ultimately found that the Plaintiff's mild mental

retardation was severe, and thus proceeded to step three.  *Blackmon*, 719 F. Supp. 2d at 90-91

(citing *Carpenter v. Astrue*, 537 F.3d 1264 (10th Cir. 2008)).  Moreover, the Plaintiff has not

demonstrated any prejudice from the ALJ's omission of the cognitive, mood, and personality

disorders (identified by Dr. Hurwitz) at step three of the analysis.  Dr. Hurwitz ultimately

concluded that the Plaintiff suffered less than substantial limitations in her ability to understand

and remember short instructions, to sustain mental abilities over the course of a normal

workday/week, to interact with supervisors, co-workers and the general public, and to tolerate

normally encountered stress in a work-like setting.  A.R. 229.  The only substantial limitation

found by Dr. Hurwitz related to the Plaintiff's ability to remember detailed instructions.  *Id.*  The

ALJ specifically credited these determinations in articulating the Plaintiff's assessed residual

functional capacity.  A.R. 13. There is nothing in the record to suggest the ALJ would have

found the Plaintiff's organic mental disorders "impos[ed] an additional and significant work-

related limitation or function," or resulted in (1) "marked restriction of activities of daily living";

(2) "marked difficulties in maintaining social functioning"; or (3) marked difficulties in

maintaining concentration, persistence, or pace," such that the Plaintiff's combination of

impairments would satisfy the relevant listings.  Accordingly, to the extent the ALJ erred in

evaluating Dr. Hurwitz's opinion, the error was not prejudicial and does not otherwise require

reversal.

> **B.**     *Determination as to the Plaintiff's Impairment*

As indicated above, the ALJ determined that the Plaintiff's impairment did not medically

meet or equal Listing 12.05(C) or (D).  The Plaintiff challenges this determination on the

grounds that the ALJ failed to consider the evidence proffered by Dr. Hurwitz as to the

Plaintiff's limitations.  To the contrary, the ALJ specifically credited Dr. Hurwitz's findings in

concluding that "the claimant can sustain a greater capacity than she described at the hearing." A.R. 13.  To the extent the Plaintiff argues the ALJ erred by failing to consider the Plaintiff's bipolar disorder, as explained *supra* Section III.A., substantial evidence supports the ALJ's decision that the Plaintiff's only severe impairment is mild mental retardation.

Substantial evidence supports the ALJ's finding that the Plaintiff does not have an impairment or combination of impairments that meet or are medically equivalent to a listed impairment.  The Plaintiff cares for her two young children, A.R. 25, uses public transportation, *id.* at 26, shops for personal and household items, *id.* at 143, pays her bills, *id.*, performs household chores, *id.* at 140, and prepares meals daily, *id.* at 142.  *See also* A.R. 221 ("[Plaintiff] reported that she attends to all of her activities of daily living in a satisfactory manner.").  The ALJ observed that the Plaintiff's testimony and demeanor during the hearing "were not suggestive of a person who is experiencing disabling mental limitations."  A.R. 13.  Dr. Hurwitz concluded that the Plaintiff faced only mild restriction of daily living activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, all of which are below the degree of limitation that satisfies the functional criteria in the relevant listings.  A.R. 246.  The ALJ's finding that the Plaintiff's impairment did not meet or equal Listing 12.05(C) or (D) is supported by substantial evidence and therefore shall be upheld.

C.    *Assessment of the Plaintiff's Residual Functional Capacity*

In terms of the ALJ's assessment of the Plaintiff's residual functional capacity, the Plaintiff initially charges that the format of the ALJ's analysis is inadequate because it was not comprised of "a narrative discussion describing how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence."  Pl.'s Mot. at 12.  This argument is

meritless.  Across three pages the ALJ analyzed the Plaintiff's testimony and the various expert opinions, referring to specific evidence and findings, and indicating what evidence was or was not credited.  *See generally* A.R. 11-13.  The merits of the ALJ's conclusion aside, the analysis of the Plaintiff's residual functional capacity was sufficiently detailed.

Turning to the merits of the ALJ's residual functional capacity findings, the Plaintiff argues that the ALJ erred by failing to consider certain opinions offered by the experts, which the Court addresses seriatim.  First, as set forth *supra*, Section III.A., the ALJ provided legitimate bases for giving limited weight to any of Dr. Greenwood's opinions, thus it was not necessary for the ALJ to further analyze each statement in Dr. Greenwood's report.  Second, Dr. Barnes questioned his own observation that the Plaintiff was confused and had difficulty concentrating, emphasizing that there was insufficient evidence to diagnose a thought disorder, and there was a suspicion of malingering.  A.R. 222-23.  Moreover, the ALJ ultimately concluded that the Plaintiff was moderately limited in maintaining attention and concentrating for extended periods of time, yet the Plaintiff fails to explain how Dr. Barnes' observation, if credited, would have altered this conclusion.  Third, the substantial evidence supports the conclusion that the Plaintiff was not moderately limited in her ability to complete a normal workday/week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods insofar as the Plaintiff was not described as easily distracted and "no slowing in work pace was noted."  A.R. 229.  The record contains substantial evidence supporting the ALJ's findings as to the Plaintiff's assessed residual functional capacity.

D.      *Plaintiff's Capacity to Perform Her Past Relevant Work*

Finally, the Plaintiff argues that the ALJ erred in finding at step four of the analysis that

the Plaintiff was capable of performing her past work as a housekeeper and child care assistant/provider.  The crux of the Plaintiff's argument on this step is that the ALJ was required to make specific findings as to the functional demands of the Plaintiff's past relevant work.  Pl.'s Mot. at 16-17 (citing *Groeper v. Sullivan*, 932 F.2d 1234 (8th Cir. 1991)).  The Plaintiff fails to cite any cases demonstrating this Circuit has adopted the standard set forth in *Groeper*.  The ALJ relied on the Vocational Expert's testimony to find that the Plaintiff is able to perform her past relevant work.  A.R. 14.  The Plaintiff does not take issue with the Vocational Expert's opinion, therefore the Court finds that opinion constitutes substantial evidence for the ALJ's decision at step four.  *See Turner v. Astrue*, 710 F. Supp. 2d 95, 109 (D.D.C. 2010); *Hurd v. Colvi*n, No. 4:12-228, 2013 WL 1149160, at *1 (E.D. Mo. Mar. 19, 2013) ("Plaintiff's case is distinguishable from *Groeper*, however, as here a vocational expert (VE) testified regarding the skill and exertional requirements of Plaintiff's past work and, based on the ALJ's hypothetical, testified Plaintiff could perform [her] past work.  This constitutes substantial evidence that Plaintiff can perform past work, and so the Commissioner's decision must be affirmed.") (citation omitted).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not procedurally deficient and is supported by substantial evidence.  There is substantial evidence in the record that mild mental retardation is the Plaintiff's sole severe impairment, and that the Plaintiff's impairment does not meet or equal the relevant listing of impairments.  The ALJ properly detailed the assessment of the Plaintiff's residual functional analysis, and properly analyzed certain opinions offered by the experts.  Finally, the ALJ was not required to make specific findings as to the functional demands of the Plaintiff's past work, and the Vocational Expert's opinion constituted substantial evidence that the Plaintiff can perform her past relevant work.

Finding no basis to reverse the ALJ's determination, the Plaintiff's [15] Motion for Judgment of Reversal is DENIED, and the Defendant's [17] Motion for Judgment of Affirmance is GRANTED.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE